# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AFAB INDUS. SERV., INC, *Plaintiff* | : : : | CIVIL ACTION |
| v. | : : | |
| PAC-WEST DISTRIB. NV LLC, *et al.*, *Defendants* | : : : | No. 19-0566 |

## MEMORANDUM

PRATTER, J.　　　　　　　　　　　　　　　　　　　　　　　　MARCH 10, 2022

The parties in this dispute each sell a chemical compound labeled for cleaning and cosmetic uses. They previously litigated the use of certain trademarks and trade dress in federal court and before the U.S. Patent and Trademark Office, ostensibly resolving this dispute through a 2016 settlement agreement. Now AFAB alleges that Pac-West Distributing NV LLC and Trent Taylor, as a Pac-West corporate agent,[1] breached the parties' prior settlement agreement, violated the Lanham Act through unfair competition and false advertising, and engaged in common law unfair competition. Pac-West filed a counterclaim, also for breach of contract, based on the settlement agreement's covenant not to sue.

After several rounds of motions to dismiss in this action and in a related action,[2] Pac-West filed a motion for summary judgment on both AFAB's claims and its own counterclaim. For the reasons discussed below, the Court denies Pac-West's summary judgment motion on the disparagement clause, Lanham Act injunctive relief, and unfair competition claims; grants summary judgment for Pac-West as to monetary damages for the Lanham Act claim; and denies Pac-West's motion for summary judgment on its counterclaim.

---

[1] The Court refers to Defendants collectively as "Pac-West."
[2] The related case is *Pac-West Distrib. NV LLC v. AFAB Indus. Servcs., et al.*, No. 19-cv-3584.

1

BACKGROUND

The Court writes for the benefit of the parties, without detailed discussion of the underlying facts pertinent to this case. *See Pac-W. Distrib. v. AFAB Indus. Serv., Inc.*, No. 19-cv-3584, 2020 WL 4470447, at *1-2 (E.D. Pa. Aug. 4, 2020).

I.   **Prior Litigation**

AFAB brought suit in this District in 2015 against Pac-West for common law defamation, tortious interference with prospective business relations, and unfair competition. *See Farr v. Pac-West Distrib, et al.*, No. 16-cv-175. AFAB also filed a petition in the U.S. Patent and Trademark Office to cancel Pac-West's registrations for its RUSH, PWD, and POWER-PAK PELLET marks and notices of opposition to Pac-West's applications for NEVER FAKE IT! and SUPER RUSH. AFAB alleged that Pac-West infringed upon its trademarks and trade dresses associated with the RUSH, PWD, SUPER RUSH, POWER-PAK PELLET and the unregistered NEVER FAKE IT! marks. Pac-West counterclaimed for defamation, false advertisement, trade dress infringement, false designation of origin, and common law unfair competition. AFAB then answered Pac-West's counterclaims with its own counterclaims seeking to cancel Pac-West's federal trademark registrations based on claims for no lawful use in commerce, abandonment, and fraud.

II.  **Settlement Agreement**

On August 23, 2016, the parties entered into a settlement agreement (the "Settlement Agreement") that, among other terms, dismissed the then-pending litigation with prejudice and resolved the petition to cancel and notices of opposition.

Pertinent here, the settlement agreement provides:

> 2.1   AFAB/Farr covenant not to sue (or send demand letters) to Pac-West and Taylor – or any of their licensees, distributors or retailers - for any use of RUSH, PWD, SUPER RUSH, POWER PAK PELLET, and NEVER FAKE IT WITHOUT IT! for the goods AFAB is currently offering under those marks.

  3.2 Pac-West/Taylor covenants not to sue or send demand letters to Farr, AFAB (or any related entity), or any of AFAB's distributors or retailers regarding the sale of AFAB's products that bear the RUSH, PWD, SUPER RUSH, POWER PAK PELLET, and NEVER FAKE IT WITHOUT IT! Marks (*i.e.*, Pac-West can continue to go after other third parties).

  6.2 **No Disparagement**. The Parties agree not to publicly disparage or malign each other in connection with the Actions or the subject matter of this Agreement.

Doc. No. 72-26, Settlement Agreement, §§ 2.1, 3.2, 6.2.

## III. This Action

AFAB claims that the use of certain marketing claims on Pac-West's website imply that AFAB's products are counterfeit and pirated, despite the previous settlement agreement stating that AFAB could continue to sell such products and that Pac-West cannot disparage AFAB's products. According to AFAB, "Defendants' Website [www.neverfakeit.com] contained and continues to contain additional statements which indicate that <u>only</u> [Pac-West and Mr. Taylor's] Products can legally use the PWD, RUSH, SUPER RUSH, and POWER PAK PELLET trademarks and that <u>only</u> Defendants' Products containing such trademarks are authentic, genuine, and/or legal." Doc. No. 40 ¶ 22 (emphasis in original). Examples of such offending statements include the following:

- "THE MARKET IS BEING FLOODED WITH DANGEROUS FAKE PRODUCT COMING FROM CHINA!!!" (the "Dangerous Fake Product Statement");

- "IF YOU DO NOT SEE [PAC-WEST DISTRIBUTING NV LLC] ON THE BOTTLE, YOUR PRODUCT IS NOT GENUINE PAC-WEST DISTRIBUTING LICENSED PRODUCT" (the "Unlicensed Product Statement");

- "All of our liquid products are labeled as SOLVENT CLEANER, not AROMA and not NAIL POLISH REMOVER!" (the "Solvent Cleaner Statement"); and

- "The CHINA counterfeiters and others have already copied these bottles." (the "Chinese Counterfeiter Statement").

3

Doc. No. 72-1, at 19. These statements, AFAB asserts, disparage its products. On November 8, 2018, AFAB and Everett L. Farr III sent a demand letter to Pac-West and Mr. Taylor objecting to a particular picture of a round-bottom bottle posted on the website around October 3, 2016. Doc. No. 72-2 ¶¶ 55–56. Pac-West removed the picture the following day, *id.* ¶ 58, and posted a "disclaimer" on its website in April 2019 that, after subsequent revisions, states:

> \*\*\*PAC-WEST DISTRIBUTING NV LLC covenanted not to sue AFAB Industrial Services Inc. for use of the words RUSH, SUPER RUSH, PWD and POWER PACK PELLET or the slogan 'NEVER FAKE IT WITHOUT IT!', (which is not the same as our famous and trademarked slogan 'NEVER FAKE IT!') for Nail Polish Remover goods. AFAB industrial Services Inc. must place its company name and Bensalem, PA, specifically, 'AFAB Industrial Services Inc. Bensalem PA' on its labels for the aforementioned goods using the words: RUSH, SUPER RUSH, PWD and POWER PACK PELLET. AFAB Industrial Services Inc. is in NO way affiliated with PAC-WEST DISTRIBUTING NV LLC of Nevada and has no ownership interest in PAC-WEST DISTRIBUTING NV LLC or any of it[]s trademarks, trade name and/or trade dress.

*Id.* ¶ 66 (*compare with id.* ¶ 63).

AFAB brought suit based on its belief that the statements on Pac-West's website violate § 6.2 of the Settlement Agreement (the "Disparagement Clause") and constitute unfair competition and false advertising under the Lanham Act and Pennsylvania common law. Pac-West argues that its prompt removal of the picture and addition of the above language in response to AFAB's demand letter resolved any potential dispute under the disparagement clause.

Pac-West moves for summary judgment against AFAB's claims and in favor of Pac-West's counterclaim.

## Legal Standard

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 252. "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (internal quotation omitted).

## DISCUSSION

### I. Pac-West's Motion for Summary Judgment

Pac-West moves for summary judgment on AFAB's claims arguing: 1) AFAB has produced no evidence to show that Pac-West breached the Disparagement Clause; 2) AFAB has produced no evidence to show that Pac-West falsely advertised on its website including evidence of any likelihood of injury for purposes of Section 43(a) of the Lanham Act; and 3) the unfair competition claim fails for the same reasons as the Lanham Act claim.

#### A. Evidence of Disparagement

Pac-West argues that the statements about fake/counterfeit products on its website do not specifically identify AFAB but rather are aimed at Chinese counterfeiters, not AFAB. As a result, Pac-West contends that "AFAB cannot prove that the Content on the Website refers to AFAB or could reasonably be understood to refer to AFAB." Doc. No. 72-1, at 21. In particular, Pac-West cites the deposition testimony of Mr. Farr, AFAB's corporate agent, who could not tell from the pictures which products were AFAB's. Doc. No. 72-1, at 23–24.

5

AFAB counters that the website "created the inference that only products distributed by [Pac]West] were authentic and that all others bearing such marks were dangerous and/or fake." Doc. No. 75, at ii. AFAB also introduces the deposition testimony of Serita Krupa, owner of Eugene Oregon, Inc., who testified (1) that Mr. Taylor, Pac-West's corporate agent, told her that under the Settlement Agreement, AFAB was no longer permitted to sell its products, and (2) that Eugene Oregon Inc. stopped purchasing products from AFAB for several years because of Pac-West's statement. Doc. No. 75, at 5 (citing Case No. 19-3584, Doc. No. 66-2, Ex. D, Tr. at 40:2–42:1). AFAB also argues that its products *are* in fact imported from China, so even the more narrowly-targeted content on the website could be understood to refer specifically to AFAB. Doc. No. 77, at 19:6–7. And Mr. Farr's inability to determine which pictures were AFAB products as opposed to counterfeit products could actually *weaken* Pac-West's argument if the average website viewer is unable to tell the difference between the alleged counterfeit products and AFAB products. While the parties do not dispute the facts surrounding the words displayed on the website, they dispute the inferences that can be drawn from this content. This dispute arguably precludes summary judgment on the disparagement claim, according to AFAB. *Ideal Dairy Farms*, 90 F.3d at 744.

Pac-West also argues that the Disparagement Clause does not apply to the content on its website because the Disparagement Clause "narrowly" applies only to "the Prior Action and TTAB Proceedings and the subject matter of the Settlement Agreement." Doc. No. 72-1, at 15–16. Pac-West emphasizes that the Settlement Agreement did not explicitly address the website, that the website existed at the time of the Settlement Agreement, and that the Settlement Agreement stated that "Pac-West can continue to go after other third parties." *Id.* at 17 (quoting § 3.2 of the Settlement Agreement). AFAB argues that the Disparagement Clause *does* apply to content on

6

the Website because it does not include any caveats or limitations and "the 'subject matter of the Agreement' includes, without limitation, Plaintiff's unfettered ability to use the trademarks in connection with its products and to do so free of any challenge by Defendants." Doc. No. 75, at 13.

The Settlement Agreement encompasses the same "RUSH, PWD, SUPER RUSH, POWER-PAK PELLET, [and] NEVER FAKE IT!" marks that are the subject of AFAB's Amended Complaint here. *Compare* Doc. No. 72-26 §§ 2.1–2.2, 3.1–3.2, *with* Doc. No. 40 ¶ 7. Thus, the Court finds that the Disparagement Clause's reference to the "subject matter" of the Agreement includes the trademarks at issue here and rejects Pac-West's argument on this point.

Lastly, Pac-West argues that the Section 3.2 language, which allows Pac-West to "go after" counterfeiters, permits precisely the sort of website content that AFAB now challenges. AFAB responds that Pac-West is permitted to "go after" actual counterfeiters with statements like its "pointed claims" about specific websites selling counterfeit products, but not to make "blanket and reckless claims against all third parties, including" AFAB. Doc. No. 72, at 16–17. The Court agrees. Construing the plain language of Sections 3.2 and 6.2 together, the parties agreed that Pac-West could "go after" counterfeiters generally but nonetheless that it could not disparage AFAB specifically in the process. Whether the blanket statements on Pac-West's website could be reasonably understood to disparage AFAB is a question of fact for a jury, making it unsuitable for summary judgment.

Thus, AFAB has introduced sufficient evidence on the Disparagement Clause breach of contract claim to preclude summary judgment for Pac-West.

### B. Lanham Act Claims

Pac-West also argues that AFAB lacks any evidence for its Lanham Act claim for false advertising and unfair competition. AFAB seeks both monetary damages and injunctive relief for the Lanham Act claim.

Typically, "a Lanham Act plaintiff must prove five elements: 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014) (alteration in original) (quoting *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011)).

Pac-West contends that no reasonable factfinder could find that the statements on the Website are false or misleading; that they are actually deceptive or likely to deceive or influence purchasing decisions; or that there is any likelihood of injury. To support this argument, Pac-West asserts that "because AFAB is not from China, there is no risk of confusing AFAB for the 'pirates' mentioned in the statements." Doc. No. 72-1, at 28. This argument fails for the same reasons discussed, *supra*, with regard to the Disparagement Clause claim.

Pac-West also argues that AFAB cannot prove the fifth element, namely, financial injury, such as declining sales because AFAB's counsel stipulated that its sales have actually increased since the conduct at issue. *Id.* at 30 (quoting Doc. No. 72-41, Ex. 37, Feb. 25, 2020 Hearing Tr. at 9:4–8). However, the injury element for a Lanham Act claim may take the form of either financial injury *or* other forms of irreparable injury, such as "loss of control of reputation, loss of trade, and

loss of goodwill." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992)."[3] Therefore, the stipulation by counsel regarding AFAB's sales is not conclusive as to whether AFAB can establish injury for a Lanham Act claim.

### 1. Injunctive Relief

AFAB argues that the Trademark Modernization Act of 2020 amended the Lanham Act in a way that establishes a presumption of irreparable harm and shifts the burden from plaintiffs. The amendment on which AFAB relies is specific to injunctive relief. Under the plaint text of the statute, as amended, "[a] plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation in the case of a motion for a permanent injunction . . . ." 15 U.S.C. § 1116. The cases cited by Pac-West that require a Lanham Act plaintiff to demonstrate irreparable harm all predate this amendment. *See, e.g.*, *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 595 (3d Cir. 2002) (evaluating whether plaintiff introduced sufficient evidence of irreparable harm); *see also Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 216 (3d Cir. 2014) (rejecting presumption of irreparable harm prior to the Trademark Modernization Act of 2020).[4] In response to the amendment, Pac-West simply argues that AFAB must show a violation of the Act in order to be entitled to the presumption. Doc. No. 77, at 36:3–8.

However, courts in other federal districts have narrowed the use of the presumption and recognized that the rebuttable presumption is specific to injunctive relief. *See, e.g.*, *Vineyard*

---

[3] AFAB also cites a case in this District, *GlaxoSmithKline LLC v. Boehringer Ingelheim Pharms., Inc.*, 484 F. Supp. 3d 207, 226 (E.D. Pa. 2020), that explains that harm to reputation or goodwill constitutes an injury regardless of impact on sales.

[4] AFAB argues that the Trademark Modernization Act provision adding the rebuttable presumption is "effective immediately" and "shall not be construed to mean that a plaintiff seeking an injunction was not entitled to a presumption of irreparable harm before the date of the enactment" of the Trademark Modernization Act. Doc. No. 75, at 11–12 (quoting Trademark Modernization Act of 2020, H.R. 6196, 116th Cong. § 6(b) (2020)). Pac-West does not address this point.

9

*House, LLC v. Constellation Brands U.S. Operations, Inc.*, 515 F. Supp. 3d 1061, 1081 n.16 (N.D. Cal. 2021); *Annie Oakley Enterprises, Inc. v. Amazon.com, Inc.*, No. 19-cv-1732, 2021 WL 4147189, at *9 (S.D. Ind. Sept. 13, 2021). Based on this case law and the plain text of the statute, the Court will apply the presumption only to the request for injunctive relief.

The Court finds that there are genuine disputes of material fact as to whether there was a violation of the Act (*i.e.*, whether the statements on Pac-West's website deceived viewers). In other words, Pac-West faces a double burden: (1) to rebut a presumption of irreparable harm from the website statements and (2) as the moving party, to show that there is no genuine dispute of material fact. Pac-West has not met *either* burden. Pac-West introduces no evidence beyond reminding the Court of a stipulation made by counsel specific to overall sales numbers. Thus, summary judgment will be denied on the false advertising claim as to the requested injunctive relief.

### 2. Monetary Damages

AFAB also seeks monetary damages under the Lanham Act. AFAB seeks the amount of Pac-West's profits under 15 U.S.C. § 1117(a)(1), damages to AFAB's goodwill and reputation under 15 U.S.C. § 1117(a), the costs of this action under 15 U.S.C. § 1117(a), and attorneys' fees. Unlike the request for injunctive relief under 15 U.S.C. § 1116, the Lanham Act provision for monetary damages does not contain a rebuttable presumption for likelihood of injury. *See* 15 U.S.C. § 1117.[5] The burden remains on AFAB to introduce evidence of injury to establish a Lanham Act claim. It is well-established that "[i]f the record in the district court contains no evidence of actual damage or actual profit in dollars and cents[, then] no monetary award may be made under § 35 of the Lanham Act [codified at § 1117] and the trademark owner must be content

---

[5] There is an exception under 15 U.S.C. § 1117(e) that allows a rebuttable presumption of a willful violation in certain contexts, but this provision is not at issue here.

with injunctive relief." *Caesars World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 274 (3d Cir. 1975).

AFAB introduces the testimony of Ms. Krupa that her company, Eugene Oregon, Inc., stopped purchasing products from AFAB as a result of Mr. Taylor's representations about the Settlement Agreement. While this could demonstrate loss of reputation or goodwill, AFAB has not shown how the Pac-West website content relates to Ms. Krupa's testimony for purposes of the Lanham Act damages claim based on representations made on the website. AFAB has offered no basis on which the Court could find that the dispute regarding what Mr. Taylor told Ms. Krupa is material to AFAB's Lanham Act damages claim based on the website statements regarding counterfeits. And unlike the injunctive relief analysis, the stipulation by AFAB's counsel *is* relevant to monetary damages. AFAB's counsel stipulated that AFAB does "not claim loss of sales, [does] not claim loss of revenues, [does] not claim loss of profit, "will not do so," and "will not even attempt to bring into this courtroom any evidence of such." Doc. No. 72-41, at 9:12–15.[6] While AFAB argues that this does not preclude the possibility that its sales would be even higher without the offending Pac-West website content, AFAB has introduced no evidence to support this theory. Thus, the Court will grant summary judgment on the Lanham Act claims for monetary damages, but not for injunctive relief.

### C. Common Law Unfair Competition Claim

Pac-West also moves for summary judgment on AFAB's common law unfair competition claim. The parties agree that courts analyze common law unfair competition claims using the same analysis as under the Lanham Act. *See Flynn v. Health Advoc., Inc.*, 169 F. App'x 99, 100 n.3 (3d

---

[6] AFAB also draws an analogy to damages required to establish a claim for defamation *per se*. The Court will not address this argument because AFAB does not raise a defamation claim in the Amended Complaint.

11

Cir. 2006). While neither party addresses whether the 2020 Trademark Modernization Act amendment to the Lanham Act should change this conventional approach, other courts have applied the Lanham Act analysis to the corresponding common law unfair competition claims with the new presumption from the Trademark Modernization Act amendment. *See, e.g., Vineyard House, LLC*, 515 F. Supp. 3d at 1080 & 1081 n.16 (noting in parallel sections that the "three state law claims turn on essentially the same tests as do their federal law counterpart claims" and that the Trademark Modernization Act introduced a rebuttable presumption of irreparable harm for injunctive relief). The parties have not directed the Court to any case law addressing whether the statutory amendment should also be incorporated in the common law analysis. Thus, the Court will also deny summary judgment on the common law unfair competition claim for injunctive relief and grant summary judgment on the claim for monetary damages for the reasons discussed above.

## II. Motion for Summary Judgment on Pac-West's Counterclaim

Pac-West also moves for summary judgment on its counterclaim for breach of Section 2.1 of the Settlement Agreement ("AFAB's Covenant Not to Sue"). Pac-West argues that the Covenant Not to Sue is broad—in stark contrast to its narrow interpretation of the "subject matter" of the Agreement for Disparagement Clause purposes—and that "the Settlement Agreement places no restrictions on the definition of 'any use' as used in Section 2.1." Doc. No. 72-1, at 39. Pac-West seeks damages for breach of contract in the form of attorneys' fees and costs in defending against this action.[7]

---

[7] Pac-West acknowledges that generally attorneys' fees are not available under Pennsylvania law, but argues that breach of a covenant not to sue is an exception. Doc. No. 72-1, at 42–43 (citing *Riveredge Assoc. v. Metro Life Ins. Co.*, 774 F. Supp. 897, 901 (D.N.J. 1991) ("[A]ttorneys fees are a proper element of damages when the right violated is the right to be free from suit."); *Jordan v. Mirra*, No. 14-cv-1485, 2019 WL 7037480, at *13 (D. Del. Dec. 20, 2019)).

12

AFAB argues that the Disparagement Clause is an exception to the Covenant Not to Sue because "no party is barred from bringing claims for breach of [the Disparagement] provision." Doc. No. 75, at 3. In addressing a previous motion to dismiss in the companion case, the Court has already ruled that, "[t]he settlement agreement does not contain any provisions barring the parties from enforcing the settlement agreement. Indeed, the settlement agreement would be meaningless if it could not be enforced." Case No. 19-3584, Doc. No. 40, at 13–14. If, as Pac-West argues, the Covenant Not to Sue bars suits based on Pac-West disparaging AFAB, then the Disparagement Clause is rendered meaningless. Therefore, the Court will deny Pac-West's motion for summary judgment on its breach of contract counterclaim.

## CONCLUSION

For the foregoing reasons, the Court grants Pac-West's motion for summary judgment in part and denies it in part. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE